# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MORNINGSIDE CAFE INC., <br><br> Plaintiff, <br><br> v. <br><br> ACUITY INSURANCE, <br><br> Defendant. | No. 20-cv-05584 <br><br> Judge John F. Kness |

## MEMORANDUM OPINION AND ORDER

Like many other Illinois small businesses, Plaintiff Morningside Cafe, Inc., a restaurant, experienced severe financial consequences as a result of the COVID-19 pandemic and the various government orders in early 2020. This prompted Plaintiff to file a claim with its insurer, Defendant Acuity Insurance, Inc., for loss of business income under a commercial general liability policy (the "Policy"). When Defendant denied the claim, Plaintiff filed this action seeking a declaratory judgment that Defendant must provide coverage to Plaintiff under the Policy for losses Plaintiff sustained due to COVID-19 and civil authority closure orders, and including claims for breach of contract and statutory bad faith denial of insurance coverage.

Defendant moved to dismiss the complaint on the grounds that the plain language of the Policy precludes coverage for Plaintiff's business income losses. As explained below, Plaintiff fails to allege any direct physical loss of, or damage to, its

insured property or other nearby property and fails to allege that it was prohibited from accessing its property. Plaintiff is thus precluded from coverage under the Policy's Business Income and Civil Authority provisions. Moreover, Plaintiff fails to state a claim under either provision, because the Policy's Virus Exclusion expressly abrogates Defendant's obligation to cover losses resulting from viruses like COVID-19. Accordingly, Defendant's motion to dismiss is granted.

## I. BACKGROUND

Plaintiff owns and operates a restaurant in Lisle, Illinois. (Complaint ("Compl.") Dkt. 1 ¶ 1.) In early 2020, the World Health Organization declared that the emerging threat from the COVID-19 virus constituted a worldwide pandemic. (*Id.* ¶ 24.) In response, Illinois Governor JB Pritzker issued Executive Closure Orders (the "Closure Orders"), forcing many restaurants, including Plaintiff, to cease operations to slow the spread of COVID-19. (*Id.* ¶ 25.) Plaintiff lost substantial revenue as a result of its closure. (*Id.* ¶¶ 26-27.)

At the time the Closure Orders were issued, Plaintiff held a commercial general liability insurance policy (the "Policy") from Defendant Acuity Insurance, Inc., with an effective period of April 2, 2019 to April 2, 2020. (*Id.* ¶ 20; Dkt. 8-2 at 2.)[1] Shortly after the Closure Orders were issued, Plaintiff timely submitted a claim for business income losses under two separate provisions of the Policy. (Compl. ¶ 31.) Both provisions require that loss or damage to property be a "direct physical loss,"

---

[1] Page references to the Policy are to the PDF page numbers.

unless otherwise excluded under the Policy. (Dkt. 8-2 at 25 (describing "Covered Causes of Loss" as "Risks of Direct Physical Loss" unless otherwise excluded).)

Plaintiff first sought coverage under the Business Income provision, which obligates Defendant to pay for business income losses sustained by Plaintiff due to suspended operations caused by a "direct physical loss of or damage to" Plaintiff's insured property:

> (1) We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your operations during the period of restoration. The suspension must be caused by *direct physical loss of or damage to* property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.
>
> …
>
> "Period of restoration" means the period the period of time that:
>
> a. Begins:
>
> (1) 24 hours after time of direct physical loss or damage for Business Income coverage; or
> (2) Immediately after the time of direct physical loss or damage for Extra Expense coverage;
>
> Caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> b. Ends on the earlier of:
>
> (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
> (2) The date when business is resumed at a new permanent location.

(*Id.* ¶ 22; Dkt. 8-2 at 28, 49 (emphasis added).)

3

Plaintiff also sought coverage under the Civil Authority provision, which obligates Defendant to pay for business interruption losses when a "Covered Cause of Loss" results in damage to other nearby property that, in turn, prompts an act of civil authority "prohibit[ing] access" to the insured premises:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that *prohibits access* to the described premises, provided that the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Compl. ¶ 23; at Dkt. 8-2 at 29-30 (emphasis added).)

The Policy also specifies certain exclusions to Covered Causes of Loss. Most importantly, the Policy's Virus Exclusion provides that Defendant will not cover loss or damage to property caused "directly or indirectly" by "any virus":

> We will not pay for loss or damage caused *directly or indirectly* by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> …
> i. Virus or Bacteria
> (1) *Any virus*, bacterium or microorganism that induces or is capable of inducing physical distress, illness or disease.

4

(Dkt 8-2 at 37-38 (emphasis added).)

Defendant denied Plaintiff's insurance claim, asserting that business interruptions losses resulting from COVID-19 do not constitute a "physical loss" under the Policy. (Compl. ¶¶ 8, 31.) Plaintiff then brought this action in September 2020 for declaratory judgment under 28 U.S.C. § 2201 (Count I), breach of contract (Count II), and bad faith denial of insurance under 215 ILCS § 5/155 (Count III). (*See generally* Compl.)

Defendant moved to dismiss Plaintiff's complaint on the grounds that the Business Income and Civil Authority provisions did not provide coverage for Plaintiff's losses and, in the alternative, that the Virus Exclusion provision expressly precludes coverage for losses resulting directly or indirectly from a virus. (Dkt. 9 at 1.)

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss,

5

the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678-79.

### III. DISCUSSION

Defendant argues that Plaintiff's complaint fails because: (1) Plaintiff's losses are not "direct *physical* loss[es]" to qualify Plaintiff for the Business Income coverage; (2) the Closure Orders did not prohibit "access to" any business to qualify Plaintiff for the Civil Authority coverage; and (3) in the alternative, that any losses resulting from the COVID-19 pandemic are expressly excluded from both provisions under the Policy's Virus Exclusion. (*See* Dkt. 9.) Plaintiff interprets the Policy's language differently. According to Plaintiff, the Virus Exclusion provision renders the Business Income and Civil Authority provisions ambiguous at best and, therefore, those provisions must be liberally construed in the insurer's favor. (*See* Dkt. 11.) Plaintiff also argues that Defendant's failure to conduct any investigation before denying Plaintiff's claim constitutes bad faith denial of coverage under section 155 of the Illinois Insurance Code. (Dkt. 11 at 15.)

Under Illinois law, the general rules governing contract interpretation also govern the interpretation of insurance policies. *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). The Court's objective is to "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* If the words of the policy are clear and unambiguous, they must be given their plain,

6

ordinary, and popular meaning. *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004). A policy provision is not rendered ambiguous simply because the parties disagree as to its meaning. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010). Courts will not strain to find ambiguity where none exists. *Ill. Farmers Ins. Co. v. Hall*, 844 N.E.2d 973, 976 (Ill. App. Ct. 2006).

Incidentally, the Seventh Circuit has issued two contemporary opinions addressing insurance coverage for lost business income arising from the COVID-19 pandemic and resulting Closure Orders for non-essential businesses. *See Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327 (7th Cir. 2021); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311 (7th Cir. 2021). Those decisions are dispositive of key issues presented in this case. In *Sandy Point*, the Seventh Circuit held that, under Illinois law, the term "direct physical loss" requires "a physical alteration to property" rather than a mere "loss of use." *Sandy Point*, 20 F.4th at 333. The Court thus rejected the proposition that closures related to COVID-19 constitute "direct physical loss." *Id.* Relatedly, the Seventh Circuit in *Mashallah* held that a virus exclusion provision—identical to Defendant's Virus Exclusion provision—unambiguously excludes coverage for losses resulting from government orders. *Mashallah*, 20 F.4th at 321-22.

In view of these freshly minted and binding precedents, all of Plaintiff's arguments fail as a matter of law. First, Plaintiff fails to allege any direct physical loss of or damage to its insured property to qualify under the Business Income provision. Second, Plaintiff fails to allege that the Closure Orders prohibited access

to its property due to a "direct physical loss" to other nearby property as required by the Civil Authority provision. Third, Plaintiff fails to allege a valid Covered Cause of Loss under the Policy as required by both provisions.

### A. Plaintiff Fails to State a Claim under the Business Income Provision

The Business Income provision obligates Defendant to pay for Plaintiff's business income losses due to suspended operations caused by "direct physical loss of or damage to" Plaintiff's insured property. The parties dispute the meaning of "direct physical loss of or damage to property" and whether Plaintiff's loss of use of its property due to the presence of COVID-19 and the ensuing Closure Orders can be considered such a "direct physical loss of [property]." Because the plain language of "[d]irect physical loss of [property]" unambiguously requires some form of actual, physical alteration of property, Plaintiff fails to state a claim under the Business Income provision as a matter of law.

As with the Policy at issue here, the policy in *Sandy Point* provided business interruption coverage where the suspension of the insured's operations was caused by direct physical loss or damage to property at the insured premises. *Sandy Point*, 20 F.4th at 333. Like Plaintiff, the insured in *Sandy Point* alleged that it was covered under that provision because "[t]he presence of [COVID-19] on or around the Plaintiff'[s] premises [ ] rendered the premises unsafe and unfit for its intended use and therefore caused physical property damage or loss." *Id.* at 334. But the Seventh Circuit rejected the *Sandy Point* plaintiff's argument, finding that the loss of a

property's intended use is "not enough" to adequately allege "direct physical loss [of property]." *Id*. at 335.

Plaintiff does not allege that there was any physical change or alteration to its insured premises that would satisfy the "physical loss of or damage to [property]" requirement under *Sandy Point*. Plaintiff argues only that "direct physical loss of [property]" includes losses stemming from "physical conditions that render the [physical] premises of the business unusable." (Dkt. 11 at 11.) But this argument, identical to the one made by the insured in *Sandy Point*, is unavailing. Physical loss of property is different from the loss of physical use of property. *Sandy Point*, 20 F.4th at 332 ("Whatever 'loss' means, it must be physical in nature"); *see also Image Dental, LLC v. Citizens Ins. Co. of Am.*, 543 F. Supp. 582, 588 (N.D. Ill. 2021) ("A 'physical loss' of property does not mean a mere inability to run a business"); *Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, 532 F. Supp 598, 602 (N.D. Ill. 2021) (if a "*physical* loss of property" is interpreted to cover a "*non-physical* loss of use of property," then the word "physical" would be "superfluous").

As in *Sandy Point*, the Policy contains textual clues that support the conclusion that "direct physical loss" contemplates physical alteration of property. For example, the Policy provides coverage for business income losses over a "period of restoration," which ends when a property is "repaired, rebuilt[,] or replaced." (Dkt. 8-2 at 28.) Without a physical alteration to property, "there would be nothing to repair, rebuild,

9

or replace." *Sandy Point*, 20 F.4th at 333. Accordingly, Plaintiff has failed to state a claim for coverage under the Business Income provision.

### B. Plaintiff Fails to State a Claim under the Civil Authority Provision

Plaintiff also seeks coverage under the Policy's Civil Authority provision, which obligates Defendant to pay for business interruption losses when an act of civil authority "prohibits access" to Plaintiff's property due to "damage to [other nearby] property." (Dkt. 8-2 at 29.) This provision explains that the "damage to [other nearby] property" must be caused by a "Covered Cause of Loss," defined as a "direct physical loss," unless otherwise excluded by the Policy. (Dkt. 8-2 at 25.) Because COVID-19 does not cause "direct physical loss," *Sandy Point*, 20 F.4th at 333, and Plaintiff fails to otherwise establish that the Closure Orders "prohibited access" to Plaintiff's premises, Plaintiff also fails to state a claim under this provision.

Just as Plaintiff fails to allege that COVID-19 caused direct physical loss to its insured property, Plaintiff also fails to allege that COVID-19 caused direct physical loss to other nearby property. Although Plaintiff never identifies the "direct physical loss" at some "other property," Plaintiff states in its response brief that the Closure Orders were issued "in ostensible response to a condition affecting the physical property: being inside increases susceptibility to COVID-19." (Dkt. 11 at 9.) Plaintiff thus relies on the same reading of "direct physical loss" the Seventh Circuit expressly rejected in *Sandy Point*. Because Plaintiff does not identify any other "direct physical loss" to "other property," Plaintiff fails to state a claim for coverage under the Civil Authority provision.

Plaintiff also fails to state that the Closure Orders "prohibited access" to "other property." The Civil Authority provision unambiguously states that the Closure Orders must "prohibit[] access" to "the area immediately surrounding the damaged property" for Plaintiff to qualify for coverage. Although the Seventh Circuit has not directly opined on the "prohibition of access" requirement, it is clear from the plain language that the provision only covers losses due to an act of civil authority that "prohibits [all] access," not some or substantial access. *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020) *aff'd sub nom. Sandy Point*, 20 F.4th at 327.

Plaintiff admits that its complaint does "not allege that the government forbade all access to the [other premises]." (Dkt. 11 at 14.) Instead, Plaintiff relies only non-binding district court decisions in different circuits finding that Closure Orders "limited access" to insureds' premises triggered Civil Authority provisions in nearly identical policies. (Dkt. 11 at 14.) But Plaintiff's attempt to expand "prohibited access" to mean access that is "by and large, either prohibited or strongly discouraged" (Dkt. 11 at 14) is out of sync with the "plain, ordinary, and popular meaning" of the provision's language, *Cent. Ill. Light Co.*, 821 N.E.2d at 213. Prohibiting access is different from limiting access. *Valley Lo Club Assoc., Inc. v. Cincinnati Ins. Co.*, 2021 WL 4477892, at *7 (N.D. Ill. Sep. 30, 2021) ("imposing limitations on operations is not the same as prohibiting access"). And although COVID-19 limited Plaintiff's operations, no order issued in Illinois prohibited access to Plaintiff's premises. *Sandy*

11

*Point*, 488 F. Supp. 3d at 694. In the light of this fact, Plaintiff does not qualify under the Civil Authority provision.

In sum, Plaintiff fails to adequately allege both "direct physical loss" to "other [nearby] property" or that the Closure Orders "prohibited access" to Plaintiff's premises. Accordingly, Plaintiff's claim for coverage under the Policy's Civil Authority provision fails.

### C. Plaintiff Fails to State a Claim under the Virus Exclusion Provision

Even if Plaintiff were successful in seeking coverage under either of the provisions described above, Plaintiff also fails to state a claim because the Policy's Virus Exclusion bars coverage where business interruption is caused by viruses. Specifically, the Virus Exclusion provides that "[Defendant] will not pay for loss or damage caused directly or indirectly by . . . any virus." (Dkt. 8-2 at 37-38.) Because COVID-19 is "any virus," and is expressly excluded from Covered Cause of Loss under the Policy, Plaintiff fails to state a claim under either the Business Income or Civil Authority provisions.

In *Mashallah,* the Seventh Circuit held that a virus exclusion provision, identical to the one at issue in this case, "clearly preclude[d] insurance coverage for losses and expenses allegedly caused by the COVID-19 pandemic and government orders issued to stem its tide." 20 F.4th at 322. The plain language of the Virus Exclusion provision is unambiguous; the provision excludes "any virus" that "sets in motion, in an unbroken causal sequence, the events that cause the ultimate loss." *Id.* Plaintiff argues that the Virus Exclusion provision does not apply because the Closure

12

Orders caused Plaintiff's business income loss, not COVID-19. (Dkt. 11 at 3.) But "there can be no honest dispute that the coronavirus was *the* reason these [Closure Orders] were promulgated. . . . The causal relationship between the novel coronavirus, the COVID-19 pandemic, the government orders, and the alleged losses and expenses 'is not debatable.' " *Mashallah*, 20 F.4th at 321 (quoting *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 894 (9th Cir. 2021)).

As the Seventh Circuit explained in *Mashallah*, COVID-19 is precisely the type of virus that triggers the Policy's Virus Exclusion. Accordingly, Plaintiff's claim for coverage under the Business Income and Civil Authority provisions independently fails under that exclusion.

## D. Plaintiff Lacks Claim for Bad Faith Denial of Coverage

Finally, Plaintiff also seeks to recover under section 155 of the Illinois Insurance Code for bad faith denial of insurance coverage. (Compl. ¶¶ 43-50.) Section 155 of the Code provides:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, [and] other costs.

215 ILCS 5/155(1).

This statue provides a remedy to "insureds who encounter unnecessary difficulties resulting from an insurance company's unreasonable and vexatious refusal to honor its contract with the insured." *Korte Constr. Corp. v. Am. States Ins.*, 750 N.E.2d 764, 771 (Ill. App. Ct. 2001). But "when an insurer denies the claim of an

13

insured because no coverage exists, the insurer has not failed to honor its contractual obligations under an insurance policy." *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002).

As explained above, the Policy's Business Income, Civil Authority, and Virus Exclusion provisions preclude coverage for Plaintiff's alleged business income losses. Because no coverage exists, Plaintiff has not alleged a plausible basis for its bad faith denial of insurance coverage claim. Accordingly, this claim must also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 8) is granted, and Plaintiff's complaint is dismissed. This dismissal is without prejudice, at least for the time being. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible"). If Plaintiff believes it can cure the deficiencies raised in this Order through an amended pleading, Plaintiff may, on or before April 22, 2022, file a motion seeking leave to file an amended complaint and identifying how the proposed amendment would cure the identified deficiencies. If Plaintiff does not file a motion seeking leave to amend by the deadline, this dismissal will automatically convert to a dismissal with prejudice.

SO ORDERED in No 20-cv-05584.

Date: March 30, 2022

JOHN F. KNESS
United States District Judge